# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LIVE FACE ON WEB, LLC,                )
                                      )
      Plaintiff,              )
                                      )
  v.                                 )      1:17cv937
                                      )
ABSONUTRIX, LLC, et al.,              )
                                      )
      Defendants.             )
                                      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

    This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendants' "Motion to Dismiss for Failure to State a Claim" (Docket Entry 11) (the "Motion"). For the reasons that follow, the Court should deny the Motion.

## BACKGROUND

    Live Face on Web, LLC ("LFOW"), commenced this action against Absonutrix, LLC, and Himanshu Nautiyal (collectively, "Defendants"), alleging copyright infringement. (See Docket Entry 1 (the "Complaint"), ¶¶ 1-3, 42.) According to the Complaint:

    "LFOW is a developer and owner of 'live person' software, which is an original work of authorship independently created by LFOW ('LFOW Software')." (Id., ¶ 11.) "The LFOW Software allows a company to display a video of a 'walking' and 'talking' personal host who introduces a website to an online visitor. The personal

host is, in effect, a website spokesperson for the specific company for whom the video has been created. Typically, the website spokesperson explains a company's products and/or services and directs a visitor's attention to a particular product or aspect of the website." (Id., ¶ 12.) "The LFOW Software seeks to enhance a website by using a real spokesperson to capture, hold and prolong the attention of the average online visitor, enhancing the ability of the website to advertise specific goods and services." (Id., ¶ 14.)

"Generally speaking, the LFOW Software can be implemented by LFOW's customers by modifying the HTML code of the LFOW customer's website. An HTML script tag is embedded in the HTML code of the LFOW customer's website, which links the LFOW customer's website to a copy of the LFOW Software." (Id., ¶ 15.) "Regardless of the particular webserver(s) where the LFOW Software is stored, the functionality and result is the same. When a web browser is directed to a website linked to the LFOW Software, the embedded HTML script tag is read by the web browser and causes the automatic distribution of a copy of the LFOW Software. The LFOW Software is automatically saved by the web browser into cache, and/or a hard drive(s), and loaded into computer memory and/or RAM (random access memory). As a result of the distribution of the LFOW software, the specific website spokesperson video is automatically launched and displayed to advertise on the associated website." (Id., ¶ 16.)

LFOW owns a registered copyright in the LFOW Software. (Id., ¶ 19.)

"Defendants own, operate and/or control the website http://www.absonutrix.com/ ('Defendants' Website')." (Id., ¶ 20.) "Upon information and belief, Defendants have used a website spokesperson video to promote their products and/or services. . . . [I]n order to display the website spokesperson video on Defendants' Website, Defendants used, copied and distributed, without permission, [an] infringing version of the LFOW Software, thereby infringing upon LFOW's rights in its copyrighted work." (Id., ¶¶ 22-23.)

"[T]o implement and distribute the infringing version of the LFOW Software, the Defendants' Website was modified by or on behalf of Defendants . . . ." (Id., ¶ 25.) Specifically, source code on Defendants' Website "links the Defendants' Website to the file 'ip_player.js', which is an infringing version of the LFOW Software, which was stored for Defendants on the webserver(s) for www.tweople.com." (Id., ¶ 26.) "As a result of the modifications to the Defendants' Website . . . when a web browser retrieves a page from the Defendants' Website, a copy of the infringing version of the LFOW Software is distributed by Defendants to the website visitor and stored on the visitor's computer in cache, memory, and/or its hard drive. Accordingly, each visit to the Defendants' Website is a new act of copyright infringement." (Id., ¶ 28.) In

sum, LFOW contends that, in modifying their website to link to the "ip_player.js" file stored on a third-party server, Defendants engaged in "direct, indirect and/or vicarious infringement of registered copyright(s)." (Id., ¶ 42.)

In response to the Complaint, Defendants moved to dismiss, contending, first, that the allegations in the Complaint do not state a plausible claim for copyright infringement under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), and second, that any alleged copyright infringement occurred outside the three-year statute of limitations. (See Docket Entry 12 at 6, 8.) LFOW filed a response to the Motion (Docket Entry 14), to which Defendants replied (Docket Entry 15).

**DISCUSSION**

**I. Failure to State a Claim**

In support of the Motion, Defendants contend that LFOW's allegations of "'use[], cop[ying] and distribut[ion]' of the code in question" constitute factually "unsupported conclusions" that fail to satisfy Rule 8's pleading standards. (Docket Entry 15 at 2 (brackets in original); see also Docket Entry 12 at 6 ("[The Complaint] does not provide facts supporting the conclusory and formulaic labels of copying and use by Absonutrix.").)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. Facts that remain "'merely consistent with'" liability fail to establish a plausible claim for relief. Id. (quoting Twombly, 550 U.S. at 557). However, a complaint need not contain detailed factual recitations, as long as it provides the defendant "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and alteration omitted).

In reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). However, the Court "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (quoting Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir.

-5-

2012)).  "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

"To establish a claim for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., a plaintiff must prove that it possesses a valid copyright and that the defendant copied elements of its work that are original and protectable." Copeland v. Bieber, 789 F.3d 484, 488 (4th Cir. 2015).  "[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies."  Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 432-33 (1984). Direct infringement of a copyright "requires *conduct* by a person who causes in some meaningful way an infringement." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 549 (4th Cir. 2004) (emphasis in original).  A defendant may also infringe a copyright indirectly under the theories of contributory and vicarious infringement.  See id. at 550.  "Under a theory of contributory infringement, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement.  Under a theory of vicarious liability, a defendant who 'has the right and ability to supervise

the infringing activity and also has a direct financial interest in such activities' is similarly liable." Id. (citation omitted) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).

Here, Defendants maintain that the Complaint's allegations fall short because they "simply do not assert that the code was ever *actually* displayed to visitors or copied to any visitor's computer; the facts stated in the Complaint merely allege that it was *possible* that the Absonutrix website displayed the software." (Docket Entry 15 at 1-2 (emphasis in original).) "[T]he Complaint does not . . . allege facts[] that the website was actually accessed, the link to the allegedly infringing code activated, or the video image supplied to the user's computer . . . ." (Id. at 3.) Stated another way, Defendants argue that, because the Complaint did not expressly allege that any visitors accessed Defendants' Website, the Complaint's allegations of "'use[], cop[ying] and distribut[ion]'" (id. at 2) constitute conclusory labels.

This line of argument lacks merit, as LFOW has alleged sufficient factual material to survive a motion to dismiss. At this stage of the proceedings, the Court must "accept the facts alleged in the [C]omplaint as true and construe them in the light most favorable to the plaintiff," Coleman, 626 F.3d at 189, and must also "draw all reasonable inferences in favor of the

plaintiff." E.I. du Pont de Nemours & Co., 637 F.3d at 440 (internal quotation marks omitted).

Here, the Complaint alleges that Defendants' Website linked to an infringing version of the LFOW Software, as well as that, when a visitor accessed Defendants' Website, "a copy of the infringing version of the LFOW Software [wa]s distributed . . . to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive." (Docket Entry 1, ¶ 28.) Additionally, the Complaint states that "Defendants actively induced end users to visit Defendants' Website, and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times." (Id., ¶ 36 (emphasis added).) "Defendants have caused, enabled and/or facilitated the infringement by, inter alia, distributing copies of the accused software to each visitor . . . ." (Id., ¶ 37 (emphasis added).) The Complaint may not allege verbatim that "the code was . . . *actually* displayed to visitors or copied to any visitor's computer" (Docket Entry 15 at 2 (emphasis in original)), but it need not to satisfy Rule 8. Taken in the light most favorable to LFOW, the Complaint's language gives rise to a reasonable inference that users actually visited Defendants' Website, and therefore that copying and distribution of the LFOW Software occurred.

Defendants further argue that the Complaint's factual allegations fail to establish that Defendants, rather than

tweople.com, committed any infringement. (See Docket Entry 12 at 6-7.) In support, Defendants rely on Flava Works, Inc. v. Gunter, 689 F.3d 754 (7th Cir. 2012). (Docket Entry 12 at 6-7.) In that case, the plaintiff sued the owner of "myVidster," a website that allows users to share links to videos that other users can then watch on their computers. See Flava Works, 689 F.3d at 756.[1] The plaintiff, "Flava," argued that by providing this service, myVidster committed contributory infringement. Id. at 757. The court, however, observed that,

> as long as the visitor makes no copy of the copyrighted video that he is watching, he is not violating the copyright owner's exclusive right . . . "to reproduce the copyrighted work in copies" and "distribute copies . . . of the copyrighted work to the public." His bypassing Flava's pay wall by viewing the uploaded copy is equivalent to stealing a copyrighted book from a bookstore and reading it. That is a bad thing to do (in either case) but it is not copyright infringement. The infringer is the customer of Flava who copied Flava's copyrighted video by uploading it to the Internet.

Id. (citation omitted) (quoting 17 U.S.C. § 106(1), (3)).

Defendants analogize their situation to myVidster's. (See Docket Entry 12 at 7.) "Like myVidster in *Flava Works*, the

---

[1] myVidster operates as follows: "Patrons of myVidster find videos on the Internet, and if they want to make them available to other patrons of myVidster . . . [they] "bookmark" (note) them on myVidster's website. Upon receiving the bookmark myVidster automatically requests the video's "embed code" from the server that hosts (that is, stores) the video. . . . The embed code contains the video's web address plus instructions for how to display the video. Armed with that code, myVidster creates a web page that makes the video appear to be on myVidster's site. . . . [T]he video is being transmitted directly from the server on which the video is stored to the viewer's computer." Id. at 757.

allegedly infringing code is embedded and the Seventh Circuit made clear that this is not copyright infringement." (Id.) However, Flava Works does not stand for the proposition that embedding code that enables the transfer of copyrighted material never constitutes copyright infringement. Rather, the Flava Works court rested its reasoning on the fact that viewers of Flava's videos using myVidster did not make copies of the videos on their computers. See Flava Works, 689 F.3d at 757. As such, myVidster's actions did not increase the amount of copyright infringement occurring and they therefore could not incur liability for contributory infringement. See id. at 757-58.

By contrast, LFOW's Complaint specifically alleges that, when a user visits Defendants' Website, "a copy of the infringing version of the LFOW Software is distributed . . . to the website visitor and stored on the visitor's computer . . . . Accordingly, each visit to the Defendants' Website is a new act of copyright infringement." (Docket Entry 1, ¶ 28.) That allegation materially distinguishes Flava Works from the instant case.

In sum, Defendants have not shown that LFOW's Complaint fails to state a claim.

## II. Statute of Limitations

Defendants also contend that any alleged infringement falls outside the Copyright Act's statute of limitations. (See Docket Entry 12 at 8.) Specifically, they note that the most recent copy

-10-

of Defendants' Website that LFOW provides dates back to May 17, 2014. (See id. at 9.) LFOW did not commence the lawsuit until October 17, 2017, and the Complaint does not expressly allege infringement occurring after May 17, 2014. (See generally Docket Entry 1.) Accordingly, Defendants argue, the Complaint falls outside the Copyright Act's three-year statute of limitations. (See Docket Entry 12 at 8-9 (citing 17 U.S.C. § 507(b)).)

A motion to dismiss generally "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the [C]omplaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the [C]omplaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

The instant case does not appear to present an example of those "rare circumstances," id. Defendants base their argument on the fact that the Complaint "points to [Defendants' Website's] source code from May 17, 2014," as well as that the Complaint attached "tweople.com code that [Defendants'] Website code links to, which is dated October 24, 2013." (Docket Entry 12 at 9.) However, it does not "clearly appear[] on the face of the

-11-

[C]omplaint," Richmond, Fredericksburg & Potomac R.R., 4 F.3d at 250, that May 17, 2014, represents the last occasion on which Defendants' Website contained a link to the infringing LFOW Software. By its express terms, the Complaint provides the copy of the code "[b]y way of example" (Docket Entry 1, ¶ 20), implying that Defendants' Website contained the link to tweople.com on other dates. Moreover, the Complaint itself states that "Defendants unlawfully and continuously used the infringing version of the LFOW Software on Defendants' Website" (id., ¶ 34 (emphasis added)), and "distributed the infringing version of the LFOW Software . . . numerous times" (id., ¶ 36 (emphasis added)). Accordingly, taking the Complaint's allegations in the light most favorable to LFOW, Defendants' Website could plausibly have linked to tweople.com on October 17, 2014, or later.

In any event, the United States Court of Appeals for the Fourth Circuit has declared that "[t]he limitations period for bringing copyright infringement claims is three years after the claims accrues. And a claim accrues when 'one has knowledge of a violation or is chargeable with such knowledge.'" Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 796 (4th Cir. 2001) (quoting Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997)). Defendants would have the Court ignore the foregoing authority on the grounds that:

(1) "[t]he Supreme Court has very clearly stated that a copyright infringement claim 'arises or "accrues" when an infringing act occurs'" (Docket Entry 12 at 8 (quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. ___, ___, 134 S. Ct. 1962, 1969 (2014)) (internal bracket omitted)); and

(2) "the 'notice' proposition was dicta in both cited Fourth Circuit cases" (id. at 10).

Neither of these rationales warrants entry of judgment for Defendants. As to the first, the Supreme Court's ruling on which Defendants rely acknowledged (but did not overrule) authority in which federal appellate courts broadly recognized, "as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" Petrella, 572 U.S. at ___ n.4, 134 S. Ct. at 1969 n.4 (quoting William A. Graham Co. v. Haughey, 568 F.3d 425, 433 (3d Cir. 2009) (citing cases, including Lyons P'ship)); see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, ___ U.S. ___, ___, 137 S. Ct. 954, 962 (2017) ("[I]n *Petrella*, we specifically noted that 'we have not passed on the question' whether the Copyright Act's statute of limitations is governed by such a [discovery] rule." (quoting Petrella, 572 U.S. at ___ n.4, 134 S. Ct. at 1969 n.4)). Second, the Supreme Court did not construe the Fourth Circuit's position on the discovery

rule as mere dicta; rather, the Supreme Court described the Fourth Circuit as (like eight other circuits) "hav[ing] adopted . . . [the] 'discovery rule,'" Petrella, 572 U.S. at ___ n.4, 134 S. Ct. at 1969 n.4 (quoting Third Circuit opinion which, in turn, listed Lyons P'ship as one of "eight of [its] sister circuits [to] have applied the discovery rule to civil actions under the Copyright Act," Haughey, 568 F.3d at 433).

Consistent with the foregoing considerations, district courts in the Fourth Circuit have continued to follow the endorsement of the discovery rule in Lyons P'ship and Hotaling, even after Petrella. See RoyaltyStat, LLC v. IntangibleSpring Corp., Civil Action No. PX 15-3940, 2018 WL 348151, at *3 (D. Md. Jan. 10, 2018); Topline Sols., Inc. v. Sandler Sys., Inc., Civil Action No. ELH-09-3102, 2017 WL 1862445, at *21 (D. Md. May 8, 2017); see also Mitchell v. Capitol Records, LLC, 287 F. Supp. 3d 673, 677 (W.D. Ky. 2017) ("Since *Petrella*, the courts interpreting [its] footnote [4] have largely decided that the discovery rule remains viable in the circuits that had previously applied it."). This Court should do likewise. See generally Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009) ("Given that the Supreme Court has not clearly spoken, the interests of predictability are served by respecting [a federal appellate court's] prior language . . . .").

As LFOW has observed, "[w]hen [it] discovered [] Defendants' infringement is a question of fact to be determined at a later

-14-

date.  There is no allegation or suggestion in the Complaint that [LFOW] discovered Defendants' infringement more than three years before filing suit."  (Docket Entry 14 at 13.)  Accordingly, the Court should not dismiss the Complaint as untimely (at least not at this juncture).

## **CONCLUSION**

The Complaint states a claim for copyright infringement and Defendants have not established as a matter of law that said claim falls outside the statute of limitations.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss for Failure to State a Claim (Docket Entry 11) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 8, 2018